### 15977. ATLANTIC COAST LINE RAILROAD CO. *v.* MARTIN.

BLOODWORTH, J. "The plaintiff's right to recover resting solely upon the statutory presumption of negligence, and the undisputed testimony of the engineer and fireman showing that they were in the exercise of all ordinary care and diligence, and that the killing of the plaintiff's cow was not due to any negligence on the part of the defendant or its employees, the presumption of negligence was fully rebutted, and the recovery in favor of the plaintiff was unauthorized. *Macon, Dublin & Savannah R. Co.* v. *Hamilton,* 9 *Ga. App.* 254 (70 S. E. 1126); *Atlantic Coast Line R. Co.* v. *Whitaker,* 10 *Ga. App.* 207 (73 S. E. 34)." *Atlantic Coast Line R. Co.* v. *Cox,* 11 *Ga. App.* 384 (75 S. E. 268). See *Whiddon* v. *Atlantic Coast Line R. Co.,* 21 *Ga. App.* 377 (2) (94 S. E. 617), and cases cited. Under the ruling in the foregoing cases the court erred in overruling the motion for a new trial.

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*

DECIDED DECEMBER 9, 1924.

Damages; from city court of Hinesville—Judge W. C. Hodges. September 26, 1924.

The suit was for the killing of the plaintiff's black mare mule by the defendant's train. No eye-witness of the killing was introduced by the plaintiff. The plaintiff testified: "The point where the mule was killed is . . 250 or 300 yards from the station-house

or depot at McIntosh. . . The track is level and straight for about ten miles at this point. The defendant's right of way is cut and the bushes cleaned out." (The defendant admitted that the track was level at that point.) "I am generally familiar with train 22 [which struck the mule] and the light it carries. I have stood ahead of the train when approaching, and it lights up the right of way. . . Being familiar with this light lighting up the right of way, I should think that any one could see a mule for one half a mile, if clear of bushes at night. . . It is perfectly clear. . . In my opinion, from the light they carry and all, he could have seen a mule for several hundred yards."

The engineer of the train testified: "On the night of September 5, 1922, I was running train No. 22, which arrives at McIntosh station at about 9:25 o'clock p. m. This train I was pulling from Jacksonville, Florida, to Savannah, Georgia. At the point where the mule in question was struck the railroad company's right of way is enclosed by a standard fence, and is fenced from a point about 300 yards south of McIntosh station to Allenhurst, a distance of four or five miles. McIntosh station . . was at that time a regular stop for the train. . . About three quarters of a mile from McIntosh depot I blew my whistle for the station and began to reduce my speed in order to make the usual stop at the station-house. My headlight was burning bright and my brakes were working all right. Just before I reached the stock-gap I saw a black mule show up on the track ahead of me. I was looking straight ahead and watching for signals at the station, as I am required to do at this point. As soon as I saw this animal, which was standing on the track about five feet south of the stock-gap and within the company's enclosed right of way, I opened the engine's cylinder-cocks, blew the whistle cattle alarm or stock alarm, and applied the brakes more promptly, in order to stop at once or as quickly as possible. The mule was about ninety feet from the front of my engine when I first saw it. When I saw the mule I had already reduced my speed, preparatory to stopping at the station, to about twenty-five miles per hour. After seeing the mule and applying the brakes for a prompt stop in order to save the mule, the engine was running about fifteen miles an hour when it struck the mule. I could not stop my engine in time to prevent killing the mule. There is nothing I could have done which I did not do to

have avoided this accident. When I struck the mule the impact threw the mule against the side of the cattle-gap brace and partially. tore it down. The mule finally landed ten or fifteen feet north of the cattle-gap and outside of the fenced right of way." The fireman of the engine testified: "About 9:25 p. m., after Mr. Wingate [the engineer] had blown his whistle for McIntosh station and during the time he was reducing his speed to stop at the station, about ninety yards, inside of the fenced right of way, . . I saw a dark object show up on the track, which a little later I discovered to be a black mule. The engineer blew the cattle alarm, opened the cylinder-cocks, and applied the brakes for a prompt stop; but before he could stop the train the mule was struck by the engine at a point about five feet south of the cattle-gap and inside of the fenced right of way, and thrown against the cattle-gap brace, tearing them partially down and finally landing on the outside of the cattle-gap by the track. I was sitting on the fireman's box, ringing the bell, as I am required to do approaching stations. Just as I saw this mule the engineer started blowing his whistle and setting his brakes for a prompt stop, and opened the cylinder-cocks. There was nothing either of us could do which was not done to prevent striking the mule."

*M. Price,* for plaintiff in error.